## Commonwealth *v.* Ehly, Appellant.

226

Submitted November 8, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*A. Charles Peruto* and *Lorch, Ryan, Peruto & Vitullo,* for appellant.

*Maxine J. Stotland, Norris E. Gelman, James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 2, 1974:

On January 27, 1967, an automobile owned by a Philadelphia City Policeman was broken into while street-parked, and the officer's official hat and badge were stolen.

On February 14, 1967, three men forced their way by gunpoint into the Manzo residence on Germantown Avenue. The residents, four in number, were tied up. A safe in a subcellar was broken into and $18,000 and a valuable diamond ring were stolen.

Appellant, Douglas Ehly, was arrested in Florida, extradited and tried on a series of charges based on the before-related crimes. He was acquitted of burglary based on the automobile entry, but was convicted of receiving stolen goods in connection with this occurrence. Ehly was convicted of armed robbery and re-

lated crimes based on the Manzo occurrence. He received a sentence of imprisonment of two to eight years on the robbery conviction. Sentences of imprisonment for lesser periods to run concurrently were imposed on the other convictions. On appeal, the Superior Court unanimously affirmed the judgments without opinion. We granted allocatur to examine several allegations of error raised by appellant.

First, we must deal with appellant's argument that he is entitled to an acquittal on the charge of receiving stolen goods because the evidence was insufficient to support his conviction for possession of the stolen police badge. The badge was discovered by the police during a search, conducted pursuant to a warrant, of the premises at 4207 Penn Street, which appellant shared with his girl friend, now his wife, Barbara Ehly. At the time of the search, February 20, 1967, appellant was in Florida. The warrant specified "guns and stolen property" and the badge was discovered in Mrs. Ehly's purse. The only evidence which linked appellant to possession of the badge was the following hearsay testimony, which came out during cross-examination of Officer Chitwood at trial: "BY MR. PERUTO, DEFENSE ATTORNEY: Q. What evidence did you have that this handbag was in possession of this defendant? A. None. Q. What evidence did you have that this badge was in the possession of this defendant? A. The woman that was living with him, Barbara Ehly, stated to me he had given her the badge. Q. She stated that to you? A. That is correct."

No objection was made to this testimony at the time. Moreover, since it was elicited as a direct result of appellant's counsel's cross-examination, and, despite the contention of appellant, was a direct response to a question put to the witness by appellant's counsel, appellant, in the absence of a motion to strike, cannot be heard to contend that the admission of the remark

constitutes reversible error. *Commonwealth v. Beach,* 445 Pa. 257, 260, 284 A.2d 792 (1971) ; *Commonwealth v. Camm,* 443 Pa. 253, 271, 277 A.2d 325 (1971). Consequently, the evidence is part of the record and it may now support appellant's conviction. The fact that Mrs. Ehly testified at trial that she had never told the police that appellant had given her the badge and that her son, Raymond Ehly, had found the badge in the street, a fact to which Raymond Ehly also testified, makes no difference. The jury was free to believe Mrs. Ehly's earlier statement to the police rather than her testimony, and the statement that appellant gave her the badge would amply support the conviction for receiving stolen goods. *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971). Cases such as *Commonwealth v. Maybee,* 429 Pa. 222, 239 A.2d 332 (1968) and *Commonwealth v. Ellsworth,* 409 Pa. 505, 187 A.2d 640 (1963), are of no help to appellant because the hearsay in those cases came on direct examination and was admitted over objection. In fact, in *Maybee, supra,* even though the conviction was based solely upon the hearsay testimony, the defendant was not granted a motion in arrest of judgment. Rather he was simply awarded a new trial because of our long-established principle that we may not grant a motion in arrest of judgment on a diminished record. Since, in the instant case, the record will not be diminished, and since, as such, the record supports the verdict, appellant's challenge to the sufficiency of the evidence must fail.

Appellant also raises serious challenges to the search warrant and to the admission of other evidence seized pursuant to the warrant, including a BB gun, ammunition, and a key ring with several automobile master keys. However, appellant filed no pretrial motion to suppress and, therefore, ordinarily, the constitutional arguments that the warrant was invalid or was unconstitutionally vague could not be raised. Rule

323(b) of Pennsylvania Rules of Criminal Procedure. However, appellant's counsel also argues that he was unable to file a pretrial motion to suppress because appellant was not arraigned until the day of trial, in violation of Rule 317(b) of Pennsylvania Rules of Criminal Procedure, and, consequently, appellant's counsel had no knowledge until trial began that charges growing out of the burglary of the policeman's car were to be tried at the same time as the charges growing out of the Manzo robbery or even that the car-related charges existed.

The record is somewhat confusing in that the bills of indictment indicate that appellant was arraigned on all charges on May 15, 1968. However, the transcript clearly shows that on April 2, 1969, when the trial began, appellant was arraigned and his trial counsel made the following objection: "MR. PERUTO (Defense Counsel): If Your Honor please, this is the very, very first I am hearing of a burglary of an automobile. I hated to say something in the presence of the jury panel. I have never, in the exposure I have had in this case, known that this defendant has been charged with a burglary of an automobile. Now, to come forward and just to spring it on me in this fashion, I don't know what to say to Your Honor about it. I think it is prejudicial to try him charged with two separate offenses that occurred on separate dates and were not even in the same month and were at two separate locations and two types of crimes and subject matters. Therefore, I ask that the District Attorney be required to elect as between them rather than try both of them before a jury for obvious reasons." The court refused appellant's motion.[1]

The Commonwealth argues, *inter alia,* that appellant waived any objection that he might have to the

---

[1] Appellant does not appeal from the denial of this motion to sever.

arraignment because he did not specifically request a continuance on the basis of the Commonwealth's failure to comply with the rule at the beginning of trial, but instead waited until midway through the trial when the police officer who executed the search warrant was testifying. At that point, after objecting to the late arraignment, appellant's counsel requested a conference in chambers, at which time he explained the problem he faced: "MR. PERUTO: You go to a Courtroom and talk about a robbery case as a defendant's counsel and some weeks later there are notes of testimony transcribed and the stenographer adds bills of indictment to the notes and I am obliged to know that I was there for it? [The prosecution] knew I was there to defend a robbery case and I was to defend a robbery case. I was surprised when I got it. No diligence requires you to investigate the whole set of files in the Quarter Sessions Court to find out what is charged against my man."

In our opinion, these objections raised by counsel were sufficient to protect his right to challenge the arraignment as being without adequate notice. Rule 317 of the Pennsylvania Rules of Criminal Procedure provides:

"(a) Arraignment shall be conducted in open court. The defendant shall be advised of the charges in the indictment(s) against him and shall plead thereto. If the defendant shall refuse to plead, the court shall enter a plea of not guilty on his behalf.

"(b) Arraignment shall be in such form and manner as provided by local court rule or practice. It shall take place at least ten days before trial unless provided otherwise by local court rule or waived by a defendant who has counsel."

The trial court reasoned, in rejecting appellant's argument after a full hearing was held on this issue, that Rule 317 had not been violated because at the time

of trial, Rule 317(e) provided that: "Arraignment in cases other than capital may be in such form and manner as provided by local court rules and practice,"[2] which would mean, according to the court, that there was nothing improper in commencing the trial on the same day as the arraignment, since that practice was permitted specifically by an administrative regulation of the Court of Quarter Sessions of Philadelphia County. However, in our opinion, a local rule may not permit a defendant to be tried without giving adequate notice of the charges facing him. *Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973); *Commonwealth v. Paskings*, 447 Pa. 350, 290 A.2d 82 (1972).

The court also concluded that appellant's counsel had adequate notice since he entered an appearance for appellant on June 24, 1968, at a time when all of the indictments were in appellant's file. However, the record shows that before the pretrial suppression hearing, counsel for appellant and counsel for all of his alleged co-conspirators in the Manzo robbery sought severance for their clients so that each co-conspirator would be tried separately. In opposing motions for severance, the district attorney argued that all of the charges grew out of the same crime, the Manzo robbery, indicating that, at the time, the prosecution may also have been unaware of the charges arising from the car burglary. Under these circumstances, we do not believe that the fact that appellant's counsel's appearance was entered for all bills of indictment, since they were all listed in the caption of the case, indicates that appellant's counsel received adequate notice of all charges against appellant.

The Commonwealth also argues that, in any case, appellant was not prejudiced by the lack of notice. Admittedly, despite appellant's counsel's contention, his

---

[2] Section (e) was deleted November 29, 1972.

failure to give the Commonwealth adequate notice concerning his alibi witnesses, with regard to the Manzo charges, was not occasioned by the delay in the arraignment since there is no doubt that counsel had notice of the Manzo charges.[3] However, in our view, it is clear that appellant was prejudiced by being forced to go to trial on charges unrelated to the Manzo robbery, at a time when his counsel knew nothing of those charges and had not prepared a defense to those charges. The lack of notice given counsel on those charges may well have had a prejudicial effect on the trial for the Manzo charges as well as the car burglary charges. It meant that counsel was not prepared to litigate the propriety of the search warrant and the admissibility of several items of evidence which, although tangentially related to the burglary of the automobile, had no relationship whatsoever to the Manzo charges, but were undoubtedly prejudicial to appellant's defense on those charges as well. Moreover, we believe that the fact that it was appellant's counsel who accidentally elicited the hearsay testimony which convicted appellant of the possession of the stolen police badge is further indication of the problems created when a case is tried by counsel with no advance knowledge of the issues involved. We cannot say beyond a reasonable doubt that this evidence, and the way it was handled because of the lack of advance notice, did not have an effect on the jury's decision in the Manzo charges, particularly since there was little evidence linking appellant to that crime other than the identification testimony of Mrs. Manzo. Accordingly, we see no choice but to reverse all convictions and remand for a new trial or trials.

This case must be reversed for an additional reason. It concerns the testimony of Mrs. Caroline Manzo, the

---

[3] Rule 312 was ruled unconstitutional. See *Commonwealth v. Contakos*, 455 Pa. 136, 314 A.2d 259 (1974).

only eyewitness to the Manzo robbery and the source of the only evidence linking appellant to that crime.

Mrs. Manzo had become familiar with appellant's name when she picked out his photograph repeatedly on several occasions out of several photographs shown to her shortly after the robbery. She learned that the man she had identified was named Douglas Ehly. Months later, appellant's name was in the newspapers when the authorities brought him back from Florida for trial. Then, on the day of the lineup, August 24, 1967, the police officer who drove Mrs. Manzo to the lineup told her that Douglas Ehly would be one of the men on view. In addition, each man in the lineup was asked to give his name when he stepped forward to be viewed. The other five participants, all policemen, gave false names while appellant gave his real name. As the suppression court explained:

"She had identified a picture of who it has been told her is Douglas Ehly, and then at the lineup one man says, 'I am Douglas Ehly.'

"Who would you expect her to pick out? Bugs Bunny?"

Even more extraordinary, attorney Bernard Segal, who attended the lineup to represent appellant and one of appellant's co-defendants,[4] testified that the lineup was apparently prearranged so that appellant would appear as No. 4 in the group. According to Segal, a mixup occurred in the order of position as those in the lineup came on the viewing stage and the officer in charge said over the microphone: "Off the stage. Everyone off the stage, Ehly is supposed to be No. 4 not number 3." When those in the lineup reappeared on the stage, Ehly was No. 4.

Even though Mrs. Manzo testified at trial that she did not hear the officer say what Mr. Segal heard, that

---

[4] At trial, appellant was represented by a different attorney.

there was obviously some type of mixup when the men in the lineup first started coming out but that Ehly had not yet appeared on stage when the men went back behind the curtain, and that she immediately recognized Ehly as soon as he appeared and before he stated his name, there is no question that the lineup was unconstitutionally suggestive and testimony about it should not have been permitted at trial.

The Commonwealth emphasizes Mrs. Manzo's testimony that she was able to identify appellant as soon as she saw him in the lineup, in arguing that her testimony about the lineup was properly admitted. However, even if we were to agree, without deciding, that Mrs. Manzo's identification powers needed no "coaching" from the police, it is the suggestiveness of the lineup procedures, not whether the witness needed such suggesting, which determines whether testimony concerning the lineup should be admitted. On these facts, it is clear that the lineup was overly suggestive.

The Commonwealth also argues that, even if testimony concerning the lineup was erroneously admitted, the admission was, at most, harmless error, because Mrs. Manzo's in-court identification of appellant was independent of the lineup. *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971). Assuming, again without deciding, that a court could find that Mrs. Manzo's in-court identification was sufficiently independent of the lineup, we are still not able to agree that the error was harmless. Mrs. Manzo was the Commonwealth's only eyewitness. She testified that she only saw appellant for two minutes at the time of the crime. Although her testimony held up despite intense cross-examination, and although it was admittedly bolstered by testimony that during the course of police investigation, Mrs. Manzo was able to pick out appellant's photograph every time it was shown to her—after passing up many other photographs—there

can be no doubt that it was also bolstered by her testimony that she was able to pick appellant out at a lineup. The erroneous admission of that latter testimony gave unfair weight to Mrs. Manzo's identification testimony. Consequently, at the retrial of this case, even if it is decided that Mrs. Manzo's in-court identification of appellant may be properly admitted, she will not be allowed to testify about the lineup.

Judgments of sentence reversed. Case remanded for a new trial.

Mr. Justice EAGEN and Mr. Justice NIX concur in the result.

Mr. Chief Justice JONES dissents.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the decision of the Court, but solely on the ground that the out-of-court lineup was unconstitutionally suggestive. *Commonwealth v. Mackey*, 447 Pa. 32, 288 A.2d 778 (1972). Whether or not the in-court identification can be said to have had an independent basis, and hence to have been untainted by the identification procedures that had gone before is not, in my view, answerable on the record now before us. It would be my preference, therefore, as was done in *United States v. Wade*, 388 U.S. 218, 242 (1967) to "vacate the conviction pending a hearing to determine whether the in-court identification had an independent source." See *Commonwealth v. Spencer*, 442 Pa. 328, 333, 275 A.2d 299 (1971); *Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970). Since, however, the Court has now mandated a new trial, the determination can be made in the context of a suppression hearing preliminary to the retrial.