354 A.2d 898
**COMMONWEALTH of Pennsylvania**
**v.**
**Helen BOONE, Appellant.**

Supreme Court of Pennsylvania.

Argued June 24, 1975.

Decided Oct. 30, 1975.

Rehearing Denied April 28, 1976.

Richard F. Furia, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., MariAnne E. Cox, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Helen Boone, was indicted for murder in the stabbing death of one Donna Stocker and subsequent-

ly convicted by a jury of voluntary manslaughter. Post-trial motions were denied and a sentence of 3½ to 10 years imprisonment was imposed. This direct appeal followed.

Initially, appellant alleges as error the suppression court's failure to suppress all written and oral statements made by appellant.

Our responsibility upon review is to determine whether the record supports the factual findings of the lower court and the legitimacy of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Stafford,* 451 Pa. 95, 101, 301 A.2d 600, 604 (1974). Furthermore, we are to consider only the evidence of the prosecution's witnesses and that portion of the testimony offered by the defendant which is uncontradicted. See generally *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Bundy,* supra.

The Commonwealth's evidence established that as a result of statements by appellant's estranged husband,[1] Ms. Boone was picked up for questioning at approximately 9:30 P.M., April 16, 1973. Police Officer Merrick, who had not up to that point participated in the investigation, was assigned the task of transporting appellant to police headquarters. Merrick testified that at this particular time, he was unaware appellant was a suspect and believed he was merely transporting a witness. Shortly after Ms. Boone entered the car, a radio dispatch directed Merrick to meet a police wagon. At this point the following conversation occurred.

"While I was sitting waiting for the wagon to arrive, Helen Boone asked me, she said, 'Do you know

---

1. Appellant and John Boone had been separated for approximately 14 months. The homicide occurred at the home which they owned as tenants by the entireties. The victim, Mr. Boone's girlfriend, had begun living there with him.

what happened?' or, did I hear anything about what happened. I said 'No.' She said, 'Where are you taking me?' I said, 'I was told to take you to the P.A.B. Homicide Division.'

At this time she stated to me, 'Then my husband's girlfriend I stabbed must have died.' . . . She continued; she stated that she had gone to her husband's home, that she was attacked by his girlfriend, and she stabbed her, and they left."

Appellant was then handcuffed, transferred to another vehicle and taken to Police Headquarters where she arrived at 10:30 P.M. At 11:00 P.M., Ms. Boone was given her Miranda warnings and repeated the inculpatory statement. The statement was reduced to writing and signed by appellant. Fifteen minutes later, the same officer returned to clarify part of the statement. This interview lasted approximately one hour wherein appellant stated further that she did not believe decedent was going to stab her nor was there a struggle when appellant grabbed the weapon from the decedent's hand. The second written statement was completed and signed at 7:45 A.M. of the morning after her arrest.

■ Appellant first argues that she was in police custody upon entering the patrol car and therefore Miranda warnings should have been given to her at that time. She thus contends that the oral statements made to the officer in the police vehicle should have been suppressed and were improperly introduced against her at trial. Accepting arguendo the fact that she was in custody when she first entered Merrick's vehicle, this fact would not be helpful to appellant's present position. Under the circumstances it is clear that these statements were not as a result of custodial interrogation but rather were voluntary and unsolicited comments. Under such circumstances Miranda warnings were not required to be given.

It is, however, only that questioning which is interrogation initiated by law enforcement officers which

calls for *Miranda* warnings. *Miranda v. Arizona,* supra, 384 U.S. 436, at 444, 86 S.Ct. 1602 at 1612, 16 L. Ed.2d 694. As this Court held in *Commonwealth v. Simala,* supra, 434 Pa. 219 at 226, 252 A.2d 575 at 578: "[I]t is not simply custody plus 'questioning,' as such, which calls for the *Miranda* safeguards but custody plus police *conduct* . . . calculated to, expected to, or likely to, evoke admissions." The rationale behind this holding is found in *Miranda,* where the Court stated: "Confessions remain a proper element in law enforcement. . . . The fundamental import of the privilege . . . is not whether [an individual] is allowed to talk to the police without the benefit of warnings and counsel, *but whether he can be interrogated.* There is no requirement that the police stop a person who enters a police station and states that he wishes to confess to a crime. . . . Volunteered statements of any kind are not barred by the Fifth Amendment. . . ." *Miranda v. Arizona,* supra at 478, 86 S.Ct. at 1630 (emphasis added).

Clearly, "any question likely to or expected to elicit a confession constitutes 'interrogation' under *Miranda.* . . ." *Commonwealth v. Simala,* supra at 227, 252 A.2d at 579. Accord, *Commonwealth v. Mercier,* 451 Pa. 211, 214, 302 A.2d 337, 339 (1973). But "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda v. Arizona,* supra at 478, 86 S.Ct. at 1630, 16 L.Ed.2d 694. *Commonwealth v. Yount,* 455 Pa. 303, 309, 314 A.2d 242, 245 (1974).

■ Appellant next claims that subsequent incriminating statements were made as a direct result of these alleged "inadmissible in-custody, prewarning" remarks and must be suppressed as "fruits of the poisonous tree." However, our disposition of the first issue is also dispositive of this claim.

█ It is next urged that all statements after the first written statement were inadmissible because of an unnecessary delay between the time of arrest and arraignment.

Appellant concedes that the period of time that transpired between her arrival at Police Headquarters and the completion of her initial statement was not sufficient to constitute an unnecessary delay as that term has been defined under our caselaw. She does, however, contend that the further incriminating facts elicited during the subsequent interrogation which resulted in a second written statement and a tape recording of that statement, did offend Rule 118 (now Rule 130) of the Pennsylvania Rules of Criminal Procedure.

The weakness of the argument is that the record demonstrates that she made all of her incriminatory statements within the first 2½ hours after her arrival at police headquarters. While it is true that the entire interrogation process exceeded 20 hours, no additional incriminating information was elicited after the first 2½ hours.

In all of the cases following our decision in *Futch*,[2] we have never considered a period of time of 2½ hours as being offensive to the requirement of a speedy arraingment.[3] While we have said the length of time itself is not necessarily determinative, *Commonwealth v. Blagman*, 458 Pa. 431, 326 A.2d 296 (1974); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973), a short interval such as the one in this instance, is indicative of the fact that there was not a nexus between the time that expired and the resultant admissions.

2.  *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972).

3.  The shortest periods of time that we have construed to be an unreasonable delay has been 5 hours in *Commonwealth v. Bey*, 462 Pa. 545, 341 A.2d 907 (1975); 5¼ hours in *Commonwealth v. Barilak*, 460 Pa. 449, 333 A.2d 859 (1975); 4 hours in *Commonwealth v. Johnson*, 459 Pa. 171, 327 A.2d 618 (1974).

Furthermore, it is immaterial from a *Futch* doctrine standpoint that the interrogation continued after the 2½ hour period. Since the information obtained during the subsequent period was merely repetitious, the appellant was not prejudiced. *Commonwealth v. Davis*, 460 Pa. 644, 334 A.2d 275 (1975); *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974).[4] In absence of prejudice to the accused, there is no justification for the imposition of the exclusionary rule of *Futch*.

▪ Further appellant contends that her physical and mental condition rendered her statements involuntary. After reviewing the totality of the circumstances to determine the voluntariness of the confession, we find this contention unsupported. The detective who conducted the interrogation testified that appellant appeared alert at all times, spoke clearly, and was willing to answer questions. She was offered food and drink, and given several opportunities to use the lavatory and rest. Appellant received her Miranda warnings prior to the commencement of the custodial interrogation and a second time during the course of it. At neither time did she request assistance of counsel or decline to speak with the officers.

While it is uncontradicted that Ms. Boone had a large abscess on her left arm, the detective testified that appellant did not request medical attention. Additionally, her signed formal statement admits that no in-custody requests were denied. Accordingly, we are satisfied that the Commonwealth has met its burden of proving an intelligent and voluntary waiver. *Commonwealth v. Goodwin*, supra; *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972).[5]

4. In *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974), approximately seven hours elapsed between the original admission and the final written statement. Here, the time period is practically identical.

5. Appellant also argued that she was psychologically coerced. A study of the record fails to provide any support for this claim.

██  Similarly, the numerous assignments of trial errors are devoid of merit.  Appellant first urges that defense counsel was improperly prohibited from cross-examining the medical examiner as to decedent's use of drugs.  We disagree.  On cross-examination the doctor was asked to read that portion of the post mortem report which indicated the presence of barbiturates in decedent's blood.  There had been no testimony of any drug use during the prosecution's case.  Moreover, it was unquestioned that decedent died of stab wounds inflicted by this appellant.  Appellant's intended use of the report was to establish a defense; that her presence at the scene stemmed from her concern for her children's contact with a drug user.[6]

This was clearly beyond the scope of direct examination and the prosecution's objection was properly sustained.  See *Commonwealth v. Schmidt*, 437 Pa. 563, 263 A.2d 382 (1970).  Furthermore, this ruling did not preclude the presentation of such evidence during the defense case, which appellant failed to do.

██  Second, it is asserted that the prosecutor's reference to the "Della Penna Club"[7] while cross-examining Ms. Boone constituted prejudicial error because it might have inflamed the jurors.  This reference occurred during cross-examination of appellant with reference to a conversation she had with her sister shortly before the stabbing.  We fail to find any prejudice to appellant.

First, there is nothing in the record to indicate that the jurors were aware of the reputation of the club.  And even more importantly, the testimony indicated that appellant did not frequent the club and in fact admonished her sister for going there.  At best this was a

---

6. Appellant presented testimony that decedent had been present on several occasions when the children visited Mr. Boone.

7. The Della Penna Club was the scene of a brutal murder of a young girl in the Kensington section of Philadelphia.  That incident occurred in 1971 and this trial took place in 1973.

vague, fleeting reference which would hardly have produced the effect suggested by appellant. See *Commonwealth v. Riley*, 459 Pa. 35, 326 A.2d 400 (1974); *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973).

■ Appellant next cites as error the reading to the jury of the officer's notes of the interrogation. It is argued that this should not have been permitted because it was admittedly not a verbatim record of what was said. This specific objection was not raised at trial and is therefore waived.

*Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Ehly*, 457 Pa. 225, 228-29, 319 A.2d 167 (1974).

■ Appellant charges it was error to overrule her motion for a directed verdict where the Commonwealth's evidence established self-defense. To the contrary, the record clearly indicates otherwise. In passing upon such a motion, the test is whether viewing all the evidence in a light most favorable to the Commonwealth, a jury could possibly find the defendant guilty as charged. All evidence actually received is to be considered without regard for the validity of the evidentiary rulings. *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974); *Commonwealth v. Pride*, 450 Pa. 557, 301 A.2d 582 (1973). The *Commonwealth's* evidence showed 1) decedent died of multiple stab wounds of the chest, back, arms and shoulder; 2) appellant's own inculpatory statements indicated she did not believe decedent would stab her and there was no struggle when appellant gained possession of the weapon; and 3) a witness' testimony that decedent appeared to be backing away when appellant approached the victim. Taken in concert, the evidence obviously provided a basis for a jury's finding of guilt and the motion was properly denied.

The next group of assignments of error relates to the adequacy of the court's charge to the jury in explaining

inter alia bias of witnesses, the presumption of innocence, reasonable doubt, the voluntariness of the confession, and self defense. We find upon a thorough review of the charge in its totality, that all instructions on the law were sufficient and calculated to properly guide the jury in their deliberations.

"[3, 4] Additionally, the trial court is not required to accept the language of the point submitted by counsel but rather is free to select its own form of expression. The only issue is whether the area is adequately, accurately and clearly presented to the jury for their consideration. Compare, *Commonwealth v. Nelson*, 396 Pa. 359, 366, 152 A.2d 913, 917 (1959); *Commonwealth v. Clanton*, 395 Pa. 521, 526, 151 A.2d 88, 91 (1959)." *Commonwealth v. McComb*, 462 Pa. 504, 509, 341 A.2d 496, 498 (1975).

See also, *Commonwealth v. Rose*, 449 Pa. 608, 297 A.2d 122 (1972).

We also find the court correctly refused to charge the jury on decedent's reputation for violence. Appellant testified that due to one specific incident, John Boone had called the decedent a "barroom brawler". Appellant's daughter also testified that decedent was "mean" and often hit her own children. However, reputation evidence is established by testimony of the *community* opinion of the individual in question, not through specific acts or mere rumor. See generally V Wigmore on Evidence, §§ 1609, 1611–1612 at 580, 583–584 (Chadbourn Ed. 1974).

Appellant complains that the court erred in failing to recharge the jury as to self-defense during the further instructions that were given at the jury's request. It is clear that the judge confined this charge to the precise questions posed by the jury. After the instruction the court inquired of the jury whether the information supplied satisfied their request and they re-

sponded in the affirmative. As we noted in *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975), the trial court is not obligated to give further instructions beyond those requested by the jury.[8]

Appellant also contends that the verdict was not a product of a free and impartial deliberation. During the course of the jury deliberations an altercation erupted among several of the jurors. The court conferred with both counsel and all agreed that it would be inappropriate to discharge the jury at that time. The panel was then called in, admonished for their behavior and permitted to continue deliberating. Having failed to voice any objection at time of trial, appellant cannot now, for the first time, raise this objection. See *Commonwealth v. Reid*, 458 Pa. 357, 326 A.2d 267 (1974).

The final objection is that appellant was denied due process of law because she was given a minimum as well as maximum sentence, pursuant to *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974).[9] This argument is predicated on a theory that *Butler's* application in this instance was tantamount to an ex post facto law. We decline to discuss the merits of this argument since appellant raised no objection during the sentencing proceedings and is therefore precluded from presenting this issue on appeal. See *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1974) and cases cited therein.

Judgment of sentence affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

---

8. It should be mentioned that the panel had already returned to the jury room when defense counsel made the request for this instruction.

9. This decision was handed down 15 days prior to imposition of sentence in the instant matter.

ROBERTS, Justice (dissenting).

I dissent. Although I agree that the first statement appellant gave to police was admissible, the subsequent statements made by appellant should have been ruled inadmissible as the product of an unreasonable delay between arrest and preliminary arraignment; Pa.R.Crim. P. 130, *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972); *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974); *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973).

By 11:00 p. m. on April 16, 1973, appellant had signed a written inculpatory statement which had been properly obtained. Instead of taking appellant to preliminary arraignment without delay, as required by Pa.R.Crim.P. 130, the police attempted to elicit additional statements from appellant to "clarify" her original statement. A second written statement was completed and signed at 7:45 a. m. the following day. Thus, 22 hours after her arrest she had still not been arraigned. These unwarranted, unnecessary delays which produce "clarifying" statements in violation of Rule 130 and the cases decided thereunder cannot be tolerated.

In an attempt to justify its conclusion that the subsequent statements were properly admissible, the majority contradicts its own recitation of the facts. The opinion states that after the initial statement was given, the police sought to have appellant "clarify" her inculpatory recitation. These clarifications were apparently sufficiently important to be reduced to writing by the police, given to appellant to sign more than eight hours after her first statement was signed, and used by the prosecution at trial. The majority states however, "Since the information obtained during the subsequent period was

merely repetitious, the appellant was not prejudiced." I cannot join this equivocation. The facts of record indicate that the subsequent statements should have been suppressed.

MANDERINO, J., joins in this dissenting opinion.