J-S06006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LANCE SMITH | : | |
| | : | |
| Appellant | : | No. 3041 EDA 2017 |

Appeal from the Judgment of Sentence September 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002395-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LANCE SMITH | : | |
| | : | |
| Appellant | : | No. 3042 EDA 2017 |

Appeal from the Judgment of Sentence September 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002394-2014

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 30, 2019**

Lance Smith appeals from the aggregate judgment of sentence of life imprisonment imposed after he was convicted of first-degree murder, firearms not to be carried without a license, recklessly endangering another person, and resisting arrest.  We affirm.

The trial court offered the following summary of the facts underlying Appellant's convictions.

[O]n the evening of November 16, 2013, there was a party at The Mixed Plate located on the 200 block of South Street in the City and County of Philadelphia. [The party was hosted by the Presley/Crenshaw family, the patriarch of which ran a company that provided security services at the Mixed Plate and other venues. Mr. Presley, Sr. employed many of his sons and stepsons through the company as bouncers. Most of them in attendance that night did so as party guests.] [Appellant] attended with his brother and several friends.

Around 1:25 a.m., one of the guests, Willie Crenshaw, noticed [Appellant] and it appeared that [Appellant] was choking a woman on the dance floor. Mr. Crenshaw intervened and a fight ensued. The fight got out of hand, others joined in and it turned ugly quickly. [Appellant] and his brother were both beaten up and pushed out of the bar by the event security. Another fight began outside. In an attempt to get some order to the area, [Appellant] [was] brought back into the bar, but again, some of the revelers attacked [Appellant]. The police responded in order to break up the fights. [Appellant] retrieved a .40 caliber handgun and returned to South Street. Willie Crenshaw, along with his brother, Demetry Presley, who needed medical attention due to injuries sustained in the bar brawl, were walking down the street when they saw [Appellant] heading towards them. They crossed the street to avoid him, but [Appellant] continued in their direction. [Appellant] started shooting at them, while walking into the street and crossing over to where Willie Crenshaw and Demetry Presley were taking cover between two vehicles. Demetry Presley was unable to walk on his own due to his earlier injuries, and needed the aid of his brother, so they were unable to run from [Appellant]. [Appellant] shot Demetry Presley multiple times, hitting him in both arms, and then while reaching over toward him, shot Demetry in the head behind his ear. [Appellant] then fled, followed by the police. After a struggle with police officers, and being instructed to put the gun down multiple times, [Appellant] was subdued and arrested. Demetry Presley died in the evening of November 17, 2013, after sustaining a total of five gunshot wounds, including the fatal one to the head.

Trial Court Opinion, 5/8/18, at 3-4 (citations omitted).

Appellant was charged at two docket numbers with murder generally, and *inter alia*, the above-mentioned crimes.[1] Appellant entered a guilty plea to third-degree murder and possession of a firearm prohibited, but was permitted to withdraw the plea. At a jury trial, the Commonwealth presented evidence of the facts detailed above. Appellant presented evidence of the extent of the injuries he sustained in the fights prior to the shooting, which included an orbital fracture and a concussion, and a witness who indicated that Appellant was "out of it" following the beatings he took. N.T. Trial, 9/8/17, at 37. Appellant also testified to his belief that he was acting in self defense because, when he encountered Crenshaw and Presley while walking in the area of the Mixed Plate following the brawl trying to locate his brother, Crenshaw pulled a gun on him, and Appellant shot at Crenshaw to protect himself. *Id*. at 81-82.

Regarding the killing of Presley, the jury was charged as to murder in the first and third degrees and voluntary manslaughter, as well as self defense and imperfect self defense. On September 11, 2017, the jury convicted Appellant of first-degree murder, and the trial court sentenced him to life imprisonment.

Appellant did not file a post-sentence motion, but did file timely notices of appeal at both docket numbers. The trial court ordered Appellant to file

---

[1] One docket number involved crimes related to the shooting of Presley, the other crimes related to the police officers endangered by Appellant's conduct.

and serve on the court a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a statement after being granted several extensions.[2]

Appellant presents the following questions to this Court, which we have reordered for ease of disposition.

I. Was the evidence insufficient to support the verdict where Appellant, who was knocked unconscious after two serious beatings, could not have formed the specific intent to kill, and where the Commonwealth failed to disprove his claim of self-defense beyond a reasonable doubt?

II. Did the lower court err by not dismissing charges against Appellant where the government failed to obtain relevant evidence from the crime scene?

III. Did the lower court err by not giving a requested instruction on involuntary manslaughter where the evidence supported such a charge?

Appellant's brief at 5.

We begin with Appellant's claim that the evidence was insufficient to establish that he committed first-degree murder. Evidentiary sufficiency is a question of law and "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Williams***, 176 A.3d 298, 305 (Pa.Super. 2017).

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable

---

[2] The statement's filing is reflected on the docket, but the statement is not included in the certified record before this Court. However, its absence does not hinder our review, as its contentions are apparent from the trial court's opinion.

inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Id*. at 305-06.

Murder in the first degree is an intentional killing. 18 Pa.C.S. § 2502(a). "In order to prove first-degree murder, the Commonwealth must establish that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill." *Commonwealth v. Sanchez*, 82 A.3d 943, 967 (Pa. 2013). "[O]ur Supreme Court has repeatedly held[ that] a jury may properly infer malice and specific intent from the fact that a victim was shot multiple times." *Commonwealth v. Kennedy*, 151 A.3d 1117, 1122 (Pa.Super. 2016). If, however, the killing was done "under a sudden and intense passion resulting from serious provocation," the actor is instead guilty of voluntary manslaughter. 18 Pa.C.S. § 2503(a).

In addition, "[w]hen a defendant claims self-defense, the burden is on the Commonwealth to disprove the defendant's claim beyond a reasonable doubt." *Commonwealth v. Patterson*, 180 A.3d 1217, 1231 (Pa.Super. 2018). That burden is satisfied upon proof of any of the following:

that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger.

**Commonwealth v. Mouzon**, 53 A.3d 738, 740-41 (Pa. 2012) (cleaned up).

An intentional killing is deemed voluntary manslaughter rather than first-degree murder if it is done under the unreasonable belief that it was justifiable. 18 Pa.C.S. § 2503(b).

Appellant's sufficiency challenge is multifaceted. Appellant claims that, given the severe injuries he and his brother sustained at the hands of the Presleys and Crenshaws "mere minutes before" the shooting, (1) he was incapable of forming the intent to kill, and rather acted under the heat of passion; and (2) the most culpable he could have been was to have acted under the unreasonable belief that deadly force was required for his own protection. Appellant's brief at 22, 24.

The trial court offered the following assessments of Appellant's contentions.

> [Appellant] retrieved a gun, saw individuals from the fight coming down the street and instead of heading in a different direction or going to the police, who were swarming the area, [Appellant] pulled out his gun and started shooting. [Appellant]'s own testimony clearly proves that he knew what he was doing and was not so affected by his previous fights that he did not know what he was doing. He not only pulled out his gun and started shooting, but he then actively pursued the two men as he went into the street shooting. He then expressly walked over to where the victim was taking cover, in order to stand over the body of his prey and shoot him in the back of the head. That [the

- 6 -

Commonwealth offered sufficient evidence to prove that Appellant] had the requisite intent to kill is without doubt in this case.

. . . .

[Appellant] told the jury that Willie Crenshaw pulled out a gun and in response to that he pulled out his own gun and began shooting, because he was scared and didn't want to die. However, [Appellant]'s testimony was unable to explain his deliberate pursuit of Willie Crenshaw and Demetry Presley, or why when he alleges it was Willie Crenshaw who was going to shoot him, it was Demetry Presley whom he shot five times. Crenshaw wasn't shot. The video shows [Appellant] entering into the street shooting his gun, continuing across the street shooting his gun, coming up behind Presley and shooting Presley in the back of the head, not Crenshaw. Presley was shot five times, Crenshaw not at all. It would be reasonable to assume that if you are claiming you are shooting at someone in self-defense, that the person you shoot is the one with the gun, not someone else. Particularly disturbing is the fact that Presley was already too injured to walk on his own before being targeted by [Appellant]. If Crenshaw was the one that [Appellant] feared because Crenshaw is alleged to be pointing the gun, then [Appellant] should have been shooting at Crenshaw. [Appellant] was walking across the street firing the gun, came up behind a severely injured and crouching Presley and shot Presley in the back of the head. The video and [Appellant]'s own testimony clearly show that [Appellant] was not acting in self-defense; he was the aggressor, and as such the Commonwealth unequivocally disproved [Appellant]'s claim of self-defense.

Trial Court Opinion, 5/8/18, at 7, 9 (citation omitted).

The trial court's analysis of the evidence accords with our own. There is no question that Appellant sustained serious injuries at the hands of the Crenshaws and Presleys, and that a reasonable person could have had a severe emotional provocation by taking such a brutal beating. Accordingly, the trial court instructed the jury as to voluntary manslaughter.

However, evidence offered by both the Commonwealth and by Appellant indicate that Appellant had sufficient time to cool off, that he had in fact cooled off, and that he deliberately shot Presley without justification. The Commonwealth offered evidence from multiple sources to establish that Appellant had been removed from the danger and given the opportunity to obtain aid from the police and/or medical professionals, and to be taken home by friends. Instead, Appellant ran from the car of women who had tried to remove him from the scene; connected with a friend who provided Appellant with a firearm and a change of clothes; went back towards the Mixed Plate to encounter Crenshaw and others who were attempting to get Presley to a hospital; attacked the unarmed group of men, shooting Presley in the arms, hand, and head; and immediately thereafter fled from the police. *See* N.T. Trial, 9/6/17, at 117, 124, 138-63; N.T. Trial, 9/7/17, at 18-20; N.T. Trial, 9/8/17, at 1679-82, 89-90, 131-43.

Appellant's own testimony fails to suggest that he was acting under a sudden and intense passion when he armed himself and went back towards the Mixed Plate. Appellant's version of events is that, after he was away from the scene of the violence, he was concerned about finding his brother. N.T. Trial 9/8/17, at 78. He located friends, tended to his own injuries, changed his shirt, tried to reach his brother by phone, formulated a plan for the group to split up to search for his brother, and encountered Presley and Crenshaw during that search. *Id*. at 95-100.

With this evidence of the delay between the provocation and the shooting; Appellant's calculated decisionmaking during the interim; Crenshaw's testimony that he and his brothers were all unarmed that night; and the facts that Appellant continued to pursue and shoot after Presley was shot multiple times and that he and Crenshaw attempted to hide before Appellant fired the shot that killed Presley; the Commonwealth offered sufficient evidence to allow the jury to reasonably conclude that Appellant shot Presley with malice and the specific intent to kill. *See*, *e.g.*, *Commonwealth v. Boone*, 354 A.2d 898, 903 (Pa. 1975) (holding evidence did not establish self-defense where the victim had been backing away from the defendant when defendant approached and victim died of multiple stab wounds to various parts of the body); *Commonwealth v. Butler*, 288 A.2d 800, 802 (Pa. 1972) (rejecting sufficiency challenge to first-degree murder conviction where circumstances made it "clear that the killings did not occur under the pressure of heat or passion[ and] sufficient time for cooling [had] elapsed between whatever provocation might have existed and the actual killings"). Therefore, Appellant's first issue warrants no relief.

Appellant next claims that the trial court erred in denying his motion to dismiss the charges based upon the Commonwealth's failure to obtain certain pieces of evidence from the crime scene. Appellant averred that the Commonwealth did not recover all of the spent shell casings from the area of the shooting. Motion to Dismiss, 8/16/17, at ¶ 2. Appellant's contention that

evidence was lost is based upon some officers' reports that there were ten casings at the crime scene, but the Commonwealth only preserved nine. He argues that the missing evidence was "highly probative and relevant to Appellant's claim of self-defense," since it was based upon his testimony that he fired only after Crenshaw pulled a gun on him. Appellant's brief at 25. Therefore, Appellant maintains that the Commonwealth committed a violation of ***Brady v. Maryland***, 373 U.S. 83 (1963), and the charges should have been dismissed. ***See*** Pa.R.Crim.P. 573(E) (providing the court may impose a remedy it deems just for a discovery violation).

The trial court offered the following response to Appellant's claim of error:

> This court found that the claim that there were ten fired casings at the crime scene was an approximation by some of the officers and that crime scene officers had provided a true and correct detailed report, which pictured all of the evidence recovered at the scene, including nine spent casings and three copper and/or lead fragments and that no fired casing was concealed from [Appellant]. As such there was no ***Brady*** violation.

Trial Court Opinion, 5/8/18, at 14.

The trial court's findings are supported by the record. ***See*** N.T. Trial, 9/6/17, at 49-52 (Officer Brian Stark testifying that nine fired cartridge casings and three bullet fragments were recovered from the scene); N.T. Trial, 9/7/17 (Captain Scott Dressel testifying that he recalled seeing ten casings at the scene, but nine versus ten confusion was explained by fact that he did not look to confirm that they were casings rather than bullet fragments); N.T. Trial

- 10 -

9/8/17, at 147 (Officer Christopher McGraw testifying that he thought there were at least ten casings on the ground at the scene, but some could have been fragments). Moreover, there is no indication in the record that anyone but Appellant fired a weapon at the scene. Indeed, Appellant himself testified that he was the only one who fired a gun that night. N.T. Trial, 9/8/17, at 100. Accordingly, Appellant has not demonstrated that the trial court committed reversible error in denying his motion to dismiss.

Finally, Appellant argues that the trial court erred in not charging the jury as to involuntary manslaughter. He claims that the trial court erred in determining the charge was not warranted, because it looked at the evidence in the light most favorable to the Commonwealth rather than in that most favorable to the defendant. Appellant's brief at 16.

"Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1286 (Pa.Super. 2018) (cleaned up).

The only reference to a request by Appellant for a jury instruction on involuntary manslaughter is the following: "I would ask you to charge with involuntarily manslaughter on both ends, both under the heat of passion, which is logical under the evidence, and under self-defense." N.T. Trial, 9/8/17, at 122.

The Pennsylvania Rules of Criminal Procedure provide, in relevant part, that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C). "[T]he mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." **Commonwealth v. Pressley**, 887 A.2d 220, 225 (Pa. 2005).

The trial court instructed the jury as to voluntary manslaughter, but not involuntary.[3] However, there is no indication in the record that Appellant raised a specific objection to the absence of the involuntary manslaughter charge at any time before the trial concluded, let alone before the jury began deliberations. Therefore, Appellant's final claim of error is waived.

Judgment of sentence affirmed.

---

[3] As discussed above, heat of passion and self defense warrant a charge of voluntary manslaughter. **Compare** 18 Pa.C.S. § 2503, **with** 18 Pa.C.S. § 2504(a) ("A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."). As such, the trial court "believed that counsel misspoke and was requesting a charge for voluntary manslaughter," and gave that instruction. Trial Court Opinion, 5/8/18, at 10.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/19