375 A.2d 1304

**COMMONWEALTH of Pennsylvania**

v.

**Kevin Williams BEY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 19, 1976.

Decided June 29, 1977.

188

David A. Silverstein, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

The facts in this case are uncontroverted. On June 10, 1974, at approximately 5:30 p. m., a twelve year old girl and her 10 year old male playmate were playing in a vacant lot in Philadelphia when they were accosted by a young black male who threatened the children and ordered the little girl to remove her undergarments. He thereupon committed various sexual acts—vaginal, rectal and oral, upon the girl's person. The children reported the crime to the Philadelphia police and gave the investigating officers a detailed description of the assailant.[1] At 10:00 p. m. on the same date Gang Control Officers of the Philadelphia Juvenile Aid Division arrested the appellant, then sixteen years of age, and took him to the 35th police district. At approximately 2:00 a. m. on June 11, 1974, while still at the 35th police district, the appellant was placed in a lineup. The appellant was represented at the lineup procedure by an attorney from the Philadelphia Defender Association who rearranged the lineup and insisted that the lineup participants be seated behind a table so that any height differentials would be eliminated. Appellant was positively identified by the two young children as the person who had accosted the complainant a few hours earlier. Appellant was subsequently transferred to the 14th police district on the morning of June 11, 1974, and

---

1. The description given to the police by the two children was quite detailed. The appellant argues that the fact that the children did not refer to the appellant's crooked teeth for the first time until the lineup some 8 hours later renders their initial description inadequate. In light of the children's positive, unwavering description in all other respects this point is not determinative of the issues before this court. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954); *Commonwealth v. Donald*, 227 Pa.Super. 407, 323 A.2d 67 (1974).

later taken to the Youth Study Center in Philadelphia.[2] At 2:30 p. m. on June 12, 1974, 40½ hours after his arrest, appellant was given a detention hearing before the Honorable Jerome A. O'Neill sitting as a committing magistrate pursuant to Section 15 of the Juvenile Act.[3] A preliminary hearing was conducted on Wednesday, July 3rd, 1974, which, in addition, was used as a certification hearing in order to determine whether the appellant should stand trial as an adult. This hearing was continued until July 9, 1974, at which time the appellant was certified by a judge of the Court of Common Pleas, Family Division, to stand trial as an adult.[4] After indictments were returned by the Grand Jury of Philadelphia County, appellant filed motions to quash the indictments and to suppress identification, which were denied. Appellant was found guilty by a jury of rape[5] and involuntary deviate sexual intercourse.[6] After timely post-trial motions were denied the appellant was sentenced to 5–20 years in a State Correctional Institution on each bill, sentences to run concurrent. This appeal followed.

■ Appellant raises several contentions before this court. He alleges that the trial court (1) erred in certifying him to the common pleas court to stand trial as an adult; (2) erred in not suppressing the identification of the appellant because the post-arrest pre-trial lineup was unduly suggestive;[7] (3)

2. The record is not clear concerning the exact time each transfer took place.

3. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 15, 11 P.S. § 50–312 (Supp. 1976–77).

4. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 28, 11 P.S. § 50–325 (Supp. 1976–77).

5. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3121 (1973).

6. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3123 (1973).

7. This contention is without merit. The composition of the lineup was not suggestive in any manner and the police made every effort to comply with all of the objections raised by the public defender who represented the appellant at the lineup. As the record indicates

erred in refusing to give two charges that he requested; and (4) erroneously dismissed the motion to quash the indictment because he was not given a preliminary arraignment without unnecessary delay pursuant to Pa.R.Crim.P. 130. We shall deal with each of these contentions in order.

## I

Appellant's initial contention is that the trial judge of the court of common pleas, Family Division erred in certifying him to stand trial as an adult pursuant to Section 28 of The Juvenile Act.[8] It is axiomatic that before this court will set aside a transfer, the appellant must show a gross abuse of the broad discretion afforded the hearing judge. *Commonwealth v. Greiner*, 236 Pa.Super. 289, 297, 344 A.2d 915, 919 (1975) *citing Commonwealth v. Pouls*, 198 Pa.Super. 595, 182 A.2d 261 (1962). Such abuse is not merely an error of judgment, but the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill will. *Commonwealth v. Greiner*, supra. There has been no suggestion, nor would the record support any allegation, that the family court judge acted in a manner that could be considered partial, prejudicial or vindictive. Appellant's contention is that his certification was improper in that the court failed to specifically report its reasons for the certification, and, *a fortiori*, the lower court failed to illustrate that it had made a full investigation of the matter and had given the certification question careful consideration. Appellant contends, therefore, that a meaningful review by this Court is not possible. *Kent v. U. S.*, 383 U.S. 541, 86 S.Ct.

all the participants were black males of similar physique. To neutralize height differentials all of the participants were seated behind a table. Appellant was neither the tallest nor the shortest, the thinnest nor the heaviest. Furthermore, appellant was dressed in entirely different clothing than that described by the victim and her playmate. Finally, the public defender was given the option to place the participants as she saw fit and having done so, she agreed that the lineup was fair and non-suggestive.

8. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 28, 11 P.S. § 50–325 (Supp. 1976–77).

1045, 16 L.Ed.2d 84 (1966); *see Freeman Appeal,* 212 Pa.Super. 422, 242 A.2d 903 (1968) (under now repealed Juvenile Court Law). We agree.

The constitutional mandates of *Kent v. U. S.,* supra, the landmark decision in this area, was made applicable to the states in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *U. S. ex rel. Turner v. Rundle,* 438 F.2d 839 (3rd Cir. 1971); *Commonwealth v. Pyle,* 462 Pa. 613 n. 8, 342 A.2d 101, 105 n. 8 (1975); *Freeman Appeal,* supra. The *Kent* Court stated:

> "[W]e hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should include conventional findings of fact, but the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court, and it must set forth the basis for the order with sufficient specificity to permit meaningful review." 383 U.S. at 561, 86 S.Ct. at 1057.

It is noteworthy that § 28 of the Juvenile Act, which sets forth the standards for a transfer of a juvenile to criminal court for trial in our Commonwealth, was adopted several years after the *Kent* decision. That section provides in relevant parts:

> "(a) After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this State, the court before hearing the petition on its merits may rule that this act is not applicable and that the offense should be prosecuted, and transfer the offense, where appropriate, to the trial or criminal division or to a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if:

> "(1) The child was fourteen or more years of age at the time of the alleged conduct; and

"(2) A hearing on whether the transfer should be made is held in conformity with this act; and

"(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing; and

"(4) The court finds that there is a prima facie case that the child committed the delinquent act alleged, and the court finds that there are reasonable grounds to believe that: (i) the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, in determining this the court may consider age, mental capacity, maturity, previous record and probation or institutional reports; and (ii) the child is not committable to an institution for the mentally retarded or mentally ill, and (iii) the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult."

This section must therefore be read within the framework of the constitutional duties prescribed by *Kent* when assessing the validity of appellant's assertions. Our court was recently faced with a situation similar to the case at bar in *Commonwealth v. Greiner*, 236 Pa.Super. 289, 344 A.2d 915 (1975). In that case Greiner was 15 years old when arrested for and convicted of criminal conspiracy, burglary, attempted kidnapping, aggravated assault, and attempted murder. A hearing pursuant to Section 28 was held in which the Commonwealth introduced testimony regarding the nature of the alleged crimes. A probation officer testified that after an investigation into Greiner's background it was his opinion that he was "in need of some firm form of rehabilitation and that Greiner could better be served in the juvenile system." Despite this testimony the lower court ordered that Greiner be certified to stand trial as an adult.[9]

9. In *Greiner* at 296, 344 A.2d at 919, we noted that:
 "Following the hearing, *the lower court issued an order granting the transfer and setting forth its findings.* The judge found that

We affirmed having found no abuse of discretion in view of the lengthy pre-transfer hearing and the lower court's attention to the requirements presented by Section 28.

In the instant case, however, the guidelines established by *Kent* and *Greiner*, even under a most liberal reading, were not complied with. Of significant importance on this point is the absence of a statement by the juvenile court judge as to the reasons for certification. Such a statement is required by the express language of *Kent*, and is required by our decision in *Freeman Appeal*, supra.[10] We are not unmindful that the *Kent* court did not require a formal statement or that it include conventional findings of fact, 383 U.S. at 561, 86 S.Ct. 1045, but it is clear from a reading of *Kent* that some statement of sufficient specificity must be supplied in order that a meaningful review can be had. None appears in the record of this case. At the first hearing[11] on July 3, 1974 the only result was that a *prima facie* case was established pursuant to Section 28. The issue of certification was discussed and decided at the second hearing on July 9, 1974. At that hearing, no testimony was

appellant was fifteen years of age at the time of the alleged offenses, that the notice required by statute had been given, that appellant was represented by counsel at the hearing, that the Commonwealth had established a prima facie case against appellant, and that appellant was not amenable to treatment as a mentally retarded or mentally ill person. The judge further found that appellant could be sentenced to a term of imprisonment of more than three years if convicted in criminal court; that the interest of the community would be best served by placing appellant under legal restraint or discipline; and that appellant was not amenable to the treatment, supervision or rehabilitation available through the juvenile court, except that provided at Camp Hill. In reaching this decision, the lower court also considered the brutality of the stabbing and striking of the victim and the serious nature of the charges against appellant and his co-conspirators." (Emphasis added.)

10. Our decision in *Freeman Appeal* was decided under the now repealed Juvenile Court Law, Act of June 7, 1933, P.L. 1433, 11 P.S. § 243 *et seq.*, but remains current law insofar as it relates to our court's analysis of *Kent v. U. S.*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

11. There were two hearings. The first hearing did not end in appellant's certification because reports on the appellant were not then finished. Thus, a second hearing was held to determine certification.

received and after only vague reference to psychologic and psychiatric reports which do not appear in the record, and a discussion of appellant's past record the juvenile court judge stated:

> "THE COURT: . . . I am going to certify the case, Mr. Silverstein. I think, as I see it, the Juvenile Court system is not an adequate setup to handle this defendant and his behavior, and I am going to certify him for that reason.
>
> "All right. Certification request is granted."

Such a statement does not satisfy the due process requirements of *Kent, Greiner* and *Freeman.* Absent an opinion or statement setting forth the reasons for certification, it is impossible for this court to afford any type of meaningful review of the issues raised by the appellant. There is no indication in the record as to whether the court considered the other criteria expressed in the statute: the child's age, mental capacity and maturity. Section 28(a)(4)(i). We cannot assume that it did. Nor will a generalized reading by the prosecuting attorney of the words of Section 28, and a statement that in his opinion the statute has been complied with, satisfy the constitutional requirements established by the Supreme Court. Simply stated, no specific reasons were advanced by the lower court for its conclusion that the child is "not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities." Thus an evaluation of the propriety of the certification is precluded.

The case must therefore be remanded for a new certification hearing to be held in conformity with the requirements of this opinion.

## II

Despite our remand for a new certification hearing it is still necessary to decide the allegations of trial error raised by appellant attacking his conviction, for if it is determined on remand that appellant's certification was proper, and no trial error is found, then appellant's conviction must be affirmed.

Appellant contends that the trial court erred when it refused to charge the jury as requested by his counsel. It is well-settled that the trial court is not required to accept the language of requested instructions submitted by counsel, but is free to select its own form of expression, so long as the issue is adequately, accurately and clearly presented to the jury for its consideration. *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Rose*, 449 Pa. 608, 297 A.2d 122 (1972). The two charges rejected by the trial court concerned an alibi defense and identification. Our examination of the record discloses that the court gave a complete and careful statement regarding alibi and also properly charged the jury on identification. Considering the charges as a whole, *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Newsome*, 462 Pa. 106, 337 A.2d 904 (1975); *Commonwealth v. Walker*, 459 Pa. 12, 326 A.2d 311 (1974); *Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973); and it is the general effect of the charge that controls, *Commonwealth v. Rodgers*, 459 Pa. 129, 327 A.2d 118 (1974); *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974), it is apparent that the court clearly and adequately covered the laws of alibi and identification and therefore was not required to give the appellant's requested points verbatim.

## III

Appellant's final contention, however, raises a serious question and requires a close analysis by this court. In essence, appellant contends that he was subject to Pa.R. Crim.P. 130 until his appearance before the family court judge, sitting as a committing magistrate, at 2:30 p. m. on June 12, 1974. Rule 130 provides

"When a defendant has been arrested without a warrant in a court case, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him and he shall be given an immediate preliminary arraignment."

Appellant thus argues that the trial court erred in ruling that a preliminary arraignment was not required since the appellant was at all times processed in strict compliance with the Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–101 *et seq.* (Supp. 1976–77). The Commonwealth contends, however, that the trial judge was correct in his ruling and further argues to this court that juvenile court proceedings are excepted from the general application of the Rules of Criminal Procedure and that Section 15 of the Juvenile Act [12] is the sole provision controlling the arraign-ment-type procedure in juvenile cases. The Commonwealth relies on Pa.R.Crim.P. 1(a) which states

"These rules shall govern criminal proceedings in all courts including courts not of record. *Unless otherwise specifically provided, these rules shall not apply to juvenile* or domestic *proceedings.*" (Emphasis added.)

At first glance, the Commonwealth's argument seems to be dispositive of this issue. However, upon closer examina-tion it becomes clear that this position must be rejected. To reach the conclusion advanced by the Commonwealth it would be necessary for this court to hold that the arrest and subsequent detention of the appellant at the police stations, and the intervening lineup, were "juvenile proceedings" within the Rules of Criminal Procedure and The Juvenile Act. This is clearly not the case and we refuse to so hold.

Our Supreme Court has held in *In re Geiger*, 454 Pa. 51, 309 A.2d 559 (1973) that the mere act of arresting of a juvenile is not by itself the initiation of "juvenile proceed-ings." In that case the Supreme Court was faced with a situation similar to that of the case on hand. Geiger, then 15 years of age, was arrested for two rapes in Philadelphia at 6:30 p. m. on May 28, 1970, by a detective who matched his description to that of a composite drawing prepared from descriptions obtained from the victims. He was taken into custody at the Central Detective Office and was thereupon subjected to a lineup in which he was not identified and a

12. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 15, 11 P.S. § 50–312 (Supp. 1976–77).

lengthy 24 hour interrogation in which he eventually made a written confession. The Supreme Court reversed our per curiam affirmance[13] and suppressed the confession under the rationale of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973). The court held that the confession was obtained only after unnecessary delay and without timely presentation of appellant before a magistrate and during a period manifestly unrelated to the completion of administrative processing or unrelated to a brief exculpatory investigation. 454 Pa. at 57–8, 309 A.2d at 562–63.

While it should be noted that the *Geiger* court was faced with a construction of § 246 of the now-repealed Juvenile Court Law,[14] Act of June 2, 1933, P.L. 1433, 11 P.S. § 243 *et seq.*, the replacement of this legislation with the new Juvenile Act, Act of Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–101 *et seq.* (Supp. 1976–77) does not warrant a different result. Section 6 of the Juvenile Act[15] provides in relevant part:

"A proceeding under this act may be commenced:

13. *In re Geiger*, 221 Pa.Super. 111, 288 A.2d 911 (1972) (Per Curiam, with Hoffman, J., joined by Spaulding, J., dissenting).

14. Section 246 of the Juvenile Court Law read:
"§ 246. Initiation of Proceedings.
"The powers of the court may be exercised—
"1. Upon the petition of any citizen, resident of the county, setting forth that (a) a child, giving his or her name, age, and residence, is neglected, dependent or delinquent, and is in need of care, guidance and control, (b) the names and residence of the parents, if any, or of his or her legal guardian if there be one, (c) the name and residence of the person or persons having control of the child, and (d) the name and residence of the nearest relative if no parent or guardian can be found.
"2. Upon commitment, by a magistrate, alderman or justice of the peace, of a child arrested for any indictable offense, other than murder, or for the violation of any other laws of this Commonwealth or the ordinance of any city, borough or township.
"3. There shall be no preliminary hearings in any cases affecting dependent, delinquent or neglected children under the age of eighteen years."

15. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–302 (Supp. 1976–77). (Purdon cites added.)

"(1) By transfer of a case as provided in Section 7 (11 P.S. § 50–303);

"(2) By the court accepting jurisdiction as provided in Section 33 (11 P.S. § 50–330) or accepting supervision of a child as provided in Section 35 (11 P.S. § 50–332); or

"(3) In other cases by the filing of a petition as provided in this act . . ."

 It is apparent from the record that none of the above legislatively prescribed methods of instituting juvenile proceedings was pursued by the law enforcement authorities prior to the appellant's detention at the 35th police district. Absent the occurrence of one of these conditions, and in this case it would have been the filing of a petition, the conclusion is inescapable that the Juvenile Act did not become applicable until sometime after the appellant was transferred from the police stations at which he was held, and not until some time after the appellant had been placed in a lineup. And it necessarily follows that juvenile proceedings not having been commenced the Commonwealth and the appellant were at all times prior to the filing of a petition pursuant to the provisions of the Juvenile Act, subject to the Pennsylvania Rules of Criminal Procedure, and more specifically Rule 130. *In re Geiger, supra* 454 Pa. at 57, 309 A.2d at 563.

 The Commonwealth argues that a contrary result is warranted since the appellant was at all times subsequent to his arrest in the custody of Juvenile Aid Division police officers. We find this argument confusing. If the Commonwealth is contending that the appellant was at all times segregated in a portion of the police station which is used solely for the detention of juveniles, then it must show, and it did not, that such a place is a detention or shelter care facility designated by the court. However, if the state is arguing that the juvenile was at all times in the police station in the custody of Juvenile Aid Division officers but detained with adults, then such a procedure is in contraven-

tion of the Juvenile Act.[16] The Commonwealth has failed to show that the appellant was processed in accordance with the Juvenile Act and we therefore find this argument unpersuasive. Furthermore, our decision is consistent with Section 13 of the Juvenile Act [17] which requires that

"(a) A person taking a child into custody, *with all reasonable speed and without first taking the child elsewhere, shall*

"(1) *Notify the parent, guardian or other custodian of the child's apprehension and his whereabouts;*

"(2) *Release the child to his parents, guardian or other custodian* upon their promise to bring the child before the court when requested by the court, unless his detention or shelter care is warranted or required under Section 12; *or*

"(3) *Bring the child before the court or deliver him to detention or shelter care facility designated by the court . . . Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to procedures and conditions prescribed by this act and rules of court.*"

Thus our legislature has, through the inclusion of this section in the Juvenile Act, incorporated and amplified the requirement that a person arrested without a warrant be taken without unnecessary delay before a magistrate. *See In re Geiger, supra* 454 Pa. at 56 n. 8, 309 A.2d at 563 n. 8. The Act is specific. Section 11(2) provides that a child may

16. Section 14 of the Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–311, provides *inter alia* :

"(a)(4) Under no circumstances shall a child be detained, placed, or committed in any facility with adults . . . unless there is no appropriate facility available . . . .

"(b) The official in charge of a jail or other facility for the detention of adult offenders or persons charged with crime *shall inform the court immediately* if a person who is or appears to be under the age of eighteen is received at the facility and shall bring him before the court upon request or deliver him to a detention or shelter care facility designated by the court."

17. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 13, 11 P.S. § 50–310 (Supp.1976–77).

be taken into custody pursuant to the laws of arrest.[18] The appellant therefore upon his arrest at 10:00 p. m. on June 10, 1974, was in "custody" within the meaning of the Juvenile Act. Consequently, before he was taken elsewhere, allowing for a period in which the authorities could administratively process the juvenile suspect, he should have either been released in the custody of his parents, guardian or other custodian or brought before a court or delivered to a detention or shelter care center designated by the court. In view of the serious charges for which the appellant was arrested it would have been quite impractical for the police to have released the appellant. However, this does not alter the fact that his lengthy detention at the 35th and 14th police districts was not proven to be in conformity with the mandatory provisions of Section 13.

Our decision today is a narrow one. We are not requiring that all juveniles who are arrested in Pennsylvania be given a preliminary arraignment. What we do hold is that after a juvenile is taken into custody, strict compliance with the provisions of the Juvenile Act by the law enforcement authorities will obviate the need for any preliminary arraignment. The Act, through its provisions adequately safeguards the rights of accused juveniles under the laws of our Commonwealth. Therefore, if a juvenile is arrested for a crime, the severity of which makes it impractical that he immediately be released in the custody of his parents, the delivery by the police of the juvenile to a court or detention or shelter care center designated by the court pursuant to Section 13 and the simultaneous filing of a petition alleging the child to be delinquent pursuant to Section 17 will effectively commence proceedings under Section 6 of the Juvenile Act and thereby preclude the applicability of Pa.R.Crim.P. 130.[19] The child can then be detained pursuant to Section

**18.** Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 11, 11 P.S. § 50–308 (Supp.1976–77).

**19.** The Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 13, 11 P.S. § 50–310 (Supp.1976–77) allows for an administrative delay in subsection (a)(3) which provides in part—"Any temporary detention or questioning of the child necessary to comply with this subsection

$12^{20}$ if the case warrants recourse to this section and it is from this moment that the state has 72 hours in which to provide the alleged delinquent juvenile an informal detention hearing pursuant to Section 15.[21]

However, having found that the appellant's rights were violated because of the Commonwealth's non-compliance with Rule of Criminal Procedure 130, our inquiry must now turn to the appropriate remedy for this violation. Appellant urges that the proper remedy in this case is the quashing of his indictment. Such a remedy is not authorized under Rule 130 and we have found no case supporting appellant's position. We reaffirm that the proper remedy is the suppression of prejudicial evidence obtained as a reasonable result of the unnecessary delay. *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972); *accord Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Jones*, 449 Pa. 619, 294 A.2d 889 (1972). Our courts have developed a three part test to be used when inquiring into an alleged violation of Rule 130. The delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reason-

shall conform to the procedures and conditions prescribed by this Act and *rules of court*. (Emphasis added.)

20. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 12, 11 P.S. § 50–309 (Supp.1976–77).

21. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, § 15, 11 P.S. § 50–312 (Supp.1976–77).

The juvenile can be initially detained pursuant to Section 12 (11 P.S. § 50–309) if the investigation by the intake authority determines that the case warrants detention and it is from that point that the authorities have 72 hours in which to provide an informal detention hearing before a court or master in order to determine whether the detention of the juvenile is required. The Commonwealth then has two options: (1) it can hold a hearing on the merits of the petition within 10 days from the filing of the petition and dispose of the case within the framework of the Juvenile Act; or (2) certification can be sought pursuant to Section 28 (11 P.S. § 50–325) as was done in this case.

ably related to the delay. *Commonwealth v. Williams*, 455 Pa. 569, 572, 319 A.2d 419, 420 (1974). Cases cited *supra.*

Assuming *arguendo* that the facts in this case satisfy this three-pronged test,[22] it should then be noted that illegal pre-trial lineups that are obtained as a result of an unnecessary delay do not automatically constitute a basis for reversal. An in-court identification following an illegal out-of-court identification is admissible if considering the totality of the circumstances the in-court identification had an independent origin sufficiently distinguishable to be purged of the primary taint. *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63 (1974); *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Wortham*, 235 Pa.Super. 25, 342 A.2d 759 (1975); *Commonwealth v. Jenkins*, 232 Pa.Super. 523, 335 A.2d 463 (1975); *Commonwealth v. Tate*, 229 Pa.Super. 202, 323 A.2d 188 (1974); *Commonwealth v. Burton*, 452 Pa. 521, 307 A.2d 277 (1973); *Commonwealth v. Baker*, 220 Pa.Super. 86, 283 A.2d 716 (1971). In discerning whether or not there is a sufficient independent origin to permit an in-court identification several facts are taken into consideration, including the opportunity the witness had to observe the accused at the scene and the conditions under which the observation was made. *Commonwealth v. Wortham*, 235 Pa.Super. 25, 29, 342 A.2d 759, 762 (1975); *Commonwealth v. Tate, supra; Commonwealth v. Burton, supra.*

In the instant case both the victim and her playmate testified that at the time of the incident it was a bright afternoon and that for the majority of the time they were no more than one or two feet away from the appellant. The playmate of the victim testified that he watched the appellant's face almost the whole time for about 8–10 minutes. The victim herself testified that she was facing the accused

---

**22.** It is not clear from the facts of this case whether there was a nexus between the delay and the challenged evidence since the pre-trial lineup occurred within the first four hours of the delay. *See Commonwealth v. Corbett*, 228 Pa.Super. 292, 323 A.2d 836 (1974).

for a number of minutes out of the 8–10 and watched his face the entire time.

In light of the ample opportunity afforded both these children to clearly observe the appellant at the scene of the crime, coupled with their unwavering certainty as to the correctness of their identification and their detailed description of the appellant, we hold that a sufficient foundation existed for the in-court identification and as such, the introduction of evidence relating to the allegedly illegal pre-trial identification was harmless error beyond a reasonable doubt.

The case is therefore remanded for a new certification hearing to be held in conformity with the requirements of Part I of this opinion. The evidence introduced at this hearing is to be limited solely to the evidence introduced at the initial certification hearing. If it is then determined that certification was improper then the indictments must be dismissed and appellant returned to the juvenile court. If it is determined that certification was proper then appellant's sentence is affirmed.

It is so ordered.

CERCONE, J., files a concurring opinion.

HOFFMAN and PRICE, JJ., file concurring and dissenting opinions.

CERCONE, Judge, concurring:

I agree with the majority's treatment and disposition of the instant appeal except for its resolution of the issue concerning Pa.R.C.P. 130. By assuming away the question of the legality of the line-up, and treating the testimony at trial concerning the line-up as harmless error, the majority has chosen a dubious course indeed. The road not taken, *Commonwealth v. Corbett*, 228 Pa.Super. 292, 323 A.2d 836 (1974), is far smoother. As we stated in that case, per Jacobs, J.:

"In the present case, appellant does not attack the lineup proceedings at which he was represented by counsel. Nor

does he claim that the lineup was of a suggestive nature. His only argument is that the identifications made at the lineup should not have been admitted at trial because the lineup was held during an unnecessary delay prior to his preliminary arraignment. Unlike the appellant in *Futch*, had the appellant in this case been taken before a magistrate prior to the lineup, he would have found himself in no better position. We cannot say that appellant was prejudiced by the delay." *Id.* 228 Pa.Super. at 296–97, 323 A.2d at 838.

Since *Corbett* so readily disposes of the question raised under Rule 130, I would resolve the question on that basis without reaching the issue of harmless error.

HOFFMAN, Judge, concurring and dissenting:

I agree with the Majority's fine analysis of the issues which it discusses. Nonetheless, I am compelled to dissent because the Majority fails to consider the admissibility of the out-of-court identification. Assuming *arguendo* (as does the Majority) that the facts in the instant case are sufficient to show a violation of Pa.R.Crim.P. 130 under the three-pronged test of *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974),[1] I conclude that the admission at trial of the illegal out-of-court identification was not harmless error. I would, therefore, reverse and remand for a new trial.

In *Gilbert v. California*, 388 U.S. 263, 272–273, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967), the Supreme Court of the United States addressed the issue of the admissibility of testimony concerning an illegal lineup.[2] The Court stated: "That testimony [that the witnesses identified appellant at the lineup] is the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality.' *Wong Sun v.*

1. The three-part test enunciated in *Commonwealth v. Williams, supra*, is as follows: "The delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reasonably related to the delay." 455 Pa. at 572, 319 A.2d at 420.

2. The post-indictment, pre-trial lineup was conducted without counsel; this practice was held unconstitutional in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

*United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441. The State is therefore not entitled to an opportunity to show that that testimony had an independent source. Only a *per se* exclusionary rule as to such testimony can be an effective sanction ⸰ . . That conclusion is buttressed by the consideration that the witness' testimony of his lineup identification will enhance the impact of his in-court identification on the jury and seriously aggravate whatever derogation exists of the accused's right to a fair trial. Therefore, unless the California Supreme Court is 'able to declare a belief that it was harmless beyond a reasonable doubt,' *Chapman v. State of California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, Gilbert will be entitled on remand to a new trial . . ." See also, *Commonwealth v. Wright,* 242 Pa.Super. 8, 363 A.2d 1133 (1976). The instant case does not involve the constitutional error of an uncounselled lineup as did *Gilbert.* However, our Pennsylvania Supreme Court has repeatedly held that "all evidence must be excluded which is obtained during an unnecessary delay between arrest and arraignment except that which has no reasonable relationship to the delay whatsoever." *Commonwealth v. Dixon,* 454 Pa. 444, 445, 311 A.2d 613, 614 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Geiger Appeal,* 454 Pa. 51, 309 A.2d 559 (1973); *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). In discussing the rationale of the "Futch" rule, Justice Pomeroy noted that the exclusionary rule of *Futch* and its progeny is directed to the control of police conduct prior to trial and operates irrespective of the reliability or probative value of the evidence excluded. It is hoped that the threat of exclusion will help to deter dilatory or illegal police conduct. *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973) (Dissenting Opinion by Pomeroy, J.).

In the instant case, the Majority assumes that the lineup was illegal because it was obtained as a result of an unnecessary delay. Clearly, testimony at trial that the witnesses

identified appellant at the lineup came as a result of exploitation of an impermissible lineup. Therefore, it is my belief that unless the admission of the out-of-court identification was harmless error beyond a reasonable doubt, *Chapman v. California, supra,* appellant is entitled to a new trial. "Before an error may be declared harmless, 'the Commonwealth must now demonstrate, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of might have contributed to the conviction.' *Commonwealth v. Pearson,* 427 Pa. 45, 49, 233 A.2d 552 (1967); *Commonwealth v. Johnson,* 227 Pa.Super. 96, 102, 323 A.2d 813 (1974). The fact that there is sufficient evidence to support a conviction apart from the erroneously admitted evidence does not satisfy the harmless error test. *Commonwealth v. Pearson, supra.*" *Commonwealth v. Tate,* 229 Pa.Super. 202, 209, 323 A.2d 188 (1974) (Dissenting Opinion by Hoffman, J.).

In *Commonwealth v. Ehly,* 457 Pa. 225, 319 A.2d 167 (1974), our Supreme Court applied these principles in analyzing the possible harmlessness of trial testimony concerning the identification of the defendant at an overly suggestive pre-trial lineup. In concluding that this testimony could not be considered harmless, the Court noted that it unfairly bolstered the witness' in-court identification. See also, *Gilbert v. California, supra.*

In the instant case, the Commonwealth presented three witnesses: the thirteen-year-old victim, a twelve-year-old eyewitness, and the police officer in charge of the case. All three testified extensively about the lineup in an effort to show that the two children were easily able to make a positive identification of appellant. The witnesses testified to every possible facet of the lineup and many pages of the trial transcript relate solely to a discussion of that event. The lineup testimony clearly bolstered the witnesses' identification of appellant, and gave unfair weight to their in-court identification testimony. Because of the detail and length of the lineup testimony, I conclude that its admission

was not harmless error beyond a reasonable doubt. I would, therefore, vacate the judgment of sentence and remand for a new trial.

PRICE, Judge, concurring and dissenting.

Appellant, aged 17, was indicted on charges of rape,[1] statutory rape[2] and involuntary deviate sexual intercourse.[3] The statutory rape charge was nol prossed; however, appellant was convicted by a jury of the remaining offenses. Appellant now raises several allegations of error. I agree that the lineup was not suggestive and that the lower court did not err in refusing two of appellant's requested points for charge. I dissent from part I and concur in the result of part III of the majority's opinion and would affirm the lower court's judgment of sentence.

Appellant first contends that the lower court erred in certifying him to stand trial as an adult. The majority in part I agrees and would remand this case for a second certification hearing based on its conclusion that "[a]bsent an opinion or statement setting forth the reasons for certification, it is impossible for this court to afford any type of meaningful review of the issues raised by appellant." (Majority opinion at 195). I believe that the lower court sufficiently complied with the requirements of *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and that a meaningful appellate review is possible on the current state of the record.

In *Kent v. United States, supra,* petitioner was certified to stand trial as an adult under the Juvenile Court Act for the District of Columbia. The provision authorizing certification read as follows:

"If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of

1. 18 Pa.C.S. § 3121.

2. 18 Pa.C.S. § 3122.

3. 18 Pa.C.S. § 3123.

an adult, . . . the judge may, *after full investigation,* waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult . . . ."[4] (emphasis added).

The lower court ordered Kent to stand trial as an adult without holding a hearing or conferring with any of the parties. As the Supreme Court noted, the statutory provision set forth above established the circumstances under which a juvenile could be ordered to stand trial as an adult, but it failed to enunciate any criteria governing a juvenile court judge's decision to waive jurisdiction. In this setting the Court held that due process required, *inter alia,* a statement of reasons sufficient to demonstrate that the statutory requirement of a "full investigation" had been met and that the question had received sufficient consideration. Because the permissible scope of discretion was not delineated by the terms of the statute, a statement setting forth the criteria employed by the transferring judge was a necessary prerequisite to any meaningful appellate review.

Our Juvenile Act,[5] in contrast to the District of Columbia Act and our prior Juvenile Court Law,[6] sets forth the substantive criteria to be applied by a judge in deciding whether to transfer a juvenile to criminal court. Moreover,

4. D.C. Code § 11–914 (1961); *see also* D.C. Code § 11–1553 (Supp. IV, 1965).

5. Act of December 6, 1972, P.L. 1464, No. 333, § 1 (11 P.S. § 50–101 (Supp.1976–77)) *et seq.,* (hereinafter cited as Juvenile Act).

6. The Act of June 2, 1933, P.L. 1433, § 18 (11 P.S. § 260), *repealed,* Act of December 6, 1972, P.L. 1464, No. 333, § 40 (11 P.S. § 50–337), provided, *inter alia,* that a member of the minor judiciary could certify certain criminal cases to the district attorney for prosecution if, in his opinion, the interests of the state required such a prosecution. In *Freeman Appeal,* 212 Pa.Super. 422, 242 A.2d 903 (1968), this court held that *Kent v. United States, supra,* applied to our statute. As the supreme court held in *Commonwealth v. Pyle,* 462 Pa. 613, 342 A.2d 101 (1975), section 28(a) of the Juvenile Act contains a codification of the requirements of *Kent v. United States, supra. See also* Comment, Proposed Pennsylvania Juvenile Act, 75 Dickinson L.Rev. 235 (1970).

the requirements, which include both objective and subjective findings, are quite specific.[7] It seems obvious that there is substantially less need for a statement of reasons under our statute than under the provision reviewed in *Kent*. In formulating its ruling, the Supreme Court specifically pointed out that the statement need not be formal or provide conventional findings of fact so long as it sets forth "the basis for the order with sufficient specificity to permit meaningful review." *Kent v. United States, supra*, 383 U.S. at 561, 86 S.Ct. at 1057. In the instant case, the lower court has complied with this requirement.[8]

Section 28(a) contains four subsections.[9] The first three establish procedural guidelines which are clearly not at issue in this case. Subsection (4) requires the following:

(1) That there is a prima facie case that the child committed the delinquent act[10] alleged;

7. Section 28(a) of the Juvenile Act provides that a case may be transferred to criminal court if:
" . .
(1) The child was fourteen or more years of age at the time of the alleged conduct; and
(2) A hearing on whether the transfer should be made is held in conformity with this act; and
(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing; and
(4) The court finds that there is a prima facie case that the child committed the delinquent act alleged, and the court finds that there are reasonable grounds to believe that: (i) the child is not amenable to treatment, supervision, or rehabilitation as a juvenile through available facilities, in determining this the court may consider age, mental capacity, maturity, previous record, and probation or institutional reports; and (ii) the child is not committable to an institution for the mentally retarded or mentally ill, and (iii) the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed by an adult."

8. I agree, however, that the better practice would be for the lower court to make a somewhat more detailed statement of reasons.

9. *See* note 7, *supra*.

10. A delinquent act includes an act designated a crime under the law of this state. *See* section 2(2) of the Juvenile Act (11 P.S. § 50–102(2)).

(2) that there are reasonable grounds to believe that the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities;

(3) that there are reasonable grounds to believe that the child is not committable to an institution for the mentally retarded or the mentally ill;

(4) that there are reasonable grounds to believe either that the interests of the community require that the child be placed under legal restraint or discipline *or* that the offense is one which would carry a sentence of more than three years *if* committed as an adult.

An examination of the above indicates that there are four elements which must be present before a certification may be ordered. In my view, the lower court unquestionably made sufficient findings of fact on the first two elements, there was no evidence on the record from which the court could have made a decision other than that required for the third element, and an examination of the Crimes Code establishes compliance with the fourth element. Each of these elements are discussed seriatim below.

In the instant case, a certification hearing was held on July 3, 1974 and July 9, 1974. A twelve year old girl and her ten year old companion positively identified appellant as the assailant who, on June 10, 1974, accosted the girl and sexually molested her. At the close of the July 3 portion of the hearing, the juvenile court judge found as a fact that a prima facie case had been established. (NT Certification Hearing at 19). This finding was clearly supported by the record.

At the close of the certification proceedings on July 9, the lower court found that "the Juvenile Court system is not an adequate set-up to handle this defendant and his behavior." (NT Certification Hearing at 26). I find that this statement is, at the very least, equivalent to a finding that there were reasonable grounds to believe that the defendant was not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities. Juvenile Act

§ 28(a)(4)(i); *Commonwealth v. Greiner*, 236 Pa.Super. 289, 344 A.2d 915 (1975).[11]

Section 28(a)(4)(i) further provides that a judge may consider the defendant's age, mental capacity, maturity, previous record and probation or institutional reports in making the above finding. The record indicates that the judge did consider these factors.

The certification hearing was continued until July 9 for the express purpose of providing sufficient time for the completion of certain psychiatric and sociological reports which were, in fact, completed and reviewed by the court prior to making its decision. These reports indicated in part as follows: Although appellant tested within the upper limits of the borderline range of intelligence his academic skills were limited and his mental discipline was poor. He was aggressive and hostile. In the opinion of the psychologist, appellant was unable to channel anger and tended to demand immediate gratification of his needs with little concern for the rights of others.

The record also demonstrates that the court considered appellant's prior criminal history. An extensive discussion of this subject immediately preceded the lower court's certification decision. Appellant had previously been adjudicated delinquent for robbery related offenses on March 25, 1973, and rape related offenses on March 12, 1971. A second robbery charge was adjusted on November 13, 1972.[12] In

11. In *Commonwealth v. Greiner*, 236 Pa.Super. 289, 344 A.2d 915 (1975), this court held that the lower court did provide a sufficient statement of findings to comply with *Kent v. United States, supra.* In effect, the lower court judge in *Greiner* merely read the statute on the record.

12. Appellant was also arrested for a third robbery on March 6, 1973. This charge has never been adjudicated. Appellant contends that this charge had been withdrawn and the lower court erroneously considered it in making its certification decision. Assuming that the lower court did consider the arrest, I would hold any error harmless because of other overwhelming evidence of reasonable grounds to believe that appellant was not subject to treatment or rehabilitation under the Juvenile Act. Moreover, appellant never objected to the

light of the above, I would hold that the lower court made a sufficient finding to satisfy section 28(a)(4)(i) and that the finding was amply supported by the record.

Section 28(a)(4)(ii) requires reasonable grounds to believe that the child was not committable to an institution for the mentally retarded or the mentally ill. Under the Mental Health and Mental Retardation Act of 1966,[13] a person is subject to involuntary commitment if he suffers from a mental disability. See Mental Health Act, art. IV, §§ 406-408 (50 P.S. §§ 4406–4408). " 'Mental disability' means any mental illness, mental impairment, mental retardation, or mental deficiency, which so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under care as provided in this act. It shall include conditions and terms heretofore defined as 'insanity,' 'unsoundness of mind,' 'lunacy,' 'mental disease,' 'mental disorder,' 'feeble minded,' 'moron,' 'idiot,' and 'imbecile' . . . ." Mental Health Act § 102 (Mental Disability) (50 P.S. § 4102 (Mental Disability)). The pre-certification psychological reports indicate that appellant tested within the upper borderline range of intelligence[14] and, therefore, at the lower end of the "average range." Although this description also means that appellant functions at the upper level of borderline mental retardation, it does not provide any basis for a belief that appellant suffered from a mental disability of the type required under the Mental Health Act in order to subject him to involuntary commitment. I would, therefore, find no error in the certification proceedings on the basis of section 28(a)(4)(ii) of the Juvenile Act.

introduction of this arrest at the hearing. Therefore, the matter is waived.

13. Act of October 20, 1966, Special Session No. 3, P.L. 96, § 101 (50 P.S. § 4101) et seq. (hereinafter cited as Mental Health Act).

14. Appellant's test scores were as follows: WAIS Verbal IQ—80; WAIS Performance IQ—81; WAIS Total IQ—79. The reporting psychologist also noted that higher potential was indicated by sound verbal reasoning skills.

Finally, section 28(a)(4) of the Juvenile Act requires reasonable grounds to believe that the interests of the community require that the child be placed under legal restraint or discipline *or that the offense is one which would carry a sentence of more than three years if committed by an adult.* The potential sentences for the crimes which were charged in the instant case were as follows: Rape, a first degree felony—twenty years; statutory rape, a second degree felony—ten years; and involuntary deviate sexual intercourse, a first degree felony—twenty years. This requirement was obviously met in the instant case.

In light of the above, I find that appellant was properly certified to stand trial as an adult. The lower court committed no error of law or gross abuse of discretion, *Commonwealth v. Greiner, supra,* and the lower court's findings are sufficiently complete for this court to afford appellant a meaningful review in compliance with due process as mandated by the Supreme Court and our Juvenile Act. I do not believe that anything will be achieved by further proceedings in the lower court [15] because the record is complete. Therefore, I would hold that the certification in the instant case was proper.

In part III of its opinion, the majority holds that the Commonwealth failed to comply with Pa.R.Crim.P. 130 and, therefore, invokes the doctrine of *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). While I agree that the admission of the pre-arraignment lineup was not reversible error, I would hold that *Commonwealth v. Futch, supra,* is inapplicable because the lineup in this case was counseled. Assuming an unnecessary delay, there was no nexus between the evidence obtained and the delay. *Compare Com-*

15. Moreover, if the original certification proceedings were so defective as to require a remand for full certification proceedings, it would seem that the proper remedy in a case of this type would be to quash the indictment because the court of common pleas, criminal division, was without jurisdiction to try the case. *See Kent v. United States, supra; Freeman Appeal, supra.*

*monwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974);[16] *Commonwealth v. Futch, supra*; with *Commonwealth v. Weaver*, 231 Pa.Super. 220, 331 A.2d 852 (1974); *Commonwealth v. Corbett*, 228 Pa.Super. 292, 323 A.2d 836 (1974).

In reaching its decision, the majority engages in a lengthy analysis of the relationship between Pa.R.Crim.P. 130 and the Juvenile Act. I agree that the Rules of Criminal Procedure apply in this type of case until a petition is filed in accordance with the Juvenile Act. *But see Anderson Appeal*, 227 Pa.Super. 439, 313 A.2d 260 (1973), wherein this court applied the Juvenile Act even though a petition had not been filed. I disagree, therefore, with any intimation that, absent the filing of a petition, the Commonwealth could have demonstrated the use of proper procedures by showing that the jail was a detention or shelter care facility designated by the court or that appellant was not detained with adults. (*See* Majority opinion at 199). The Juvenile Act had not become applicable in the instant situation. I express no opinion at this time on the effect of filing a petition under the Juvenile Act after the defendant has been arrested and detained for a reasonable time without a preliminary arraignment. *See generally Anderson Appeal, supra.*

I would affirm the judgment of sentence of the lower court.

---

16. In *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974), the supreme court held that although police officers are not required to cease all investigation at the time of a warrantless arrest, they must comply with former Rule 118, now Rule 130, prior to any investigatory procedure conducted for the purpose of gathering further evidence against the accused if that procedure is dependent upon the waiver of a constitutional right. Appellant, in this case, was provided with counsel prior to the lineup, as was his right, *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), and therefore has no grounds for complaint.